Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRUZ MARINA VASQUEZ RODRIGUEZ and WILLIAM RODRIGUEZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>*Defendants*. | Civil Action No. 18-7959<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court are motions to dismiss filed by Defendant Gateway Funding Diversified Mortgage Services, LP ("Gateway"), D.E. 9, as well as Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and the Bank of New York Mellon f/k/a the Bank of New York as successor in interest to JPMorgan Chase Bank, N.A., as Trustee for RBSGC Mortgage Loan Trust Mortgage Pass-through Certificates, Series 2005-RPI, as assignee and successor in interest ("BNYM"), D.E. 13. Plaintiffs Cruz Marina Vasquez Rodriguez ("Ms. Rodriquez") and William Rodriguez (collectively "Plaintiffs") filed a single brief in opposition, D.E. 13, to which Wells Fargo and BNYM replied, D.E. 14.[1] The Court reviewed the parties' submissions and decided the motions

---

[1] Gateway's brief in support of its motion to dismiss, D.E. 9, will be referred to as "Gateway Br."; Wells Fargo and BNYM's brief in support of their motion to dismiss, D.E. 10-1, will be referred to as "BNYM Br."; Plaintiffs' memorandum in opposition, D.E. 13, will be referred to as "Plfs. Opp."; and Wells Fargo and BNYM's reply in support of their motion, D.E. 14, will be referred to as "BNYM Reply Br."

without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the Complaint is dismissed in its entirety.

I. **FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY**

On November 15, 2002, Plaintiffs entered into a mortgage with Electronic Registration Systems, Inc. as nominee for Gateway, and purchased a two-family residence in Wallington, New Jersey. Compl. Ex. F. Plaintiffs were not fluent in English; as a result, "Defendants representatives had to input and translate all the information on the mortgage loan documents." *Id.* ¶ 8. Allegedly due to the language barrier, Ms. Rodriguez's Columbian passport number was inputted on the mortgage application instead of her social security number. Thus, the executed loan documents contained a "clerical error." *Id.* ¶¶ 9, 11. When this occurred, Defendants were aware that Ms. Rodriguez was a legal permanent resident who did not have a social security number. *Id.* ¶ 10. Plaintiffs allege that for the next six years, they made timely mortgage payments, seemingly without issue. *Id.* ¶ 12.

In January 2009, Gateway assigned Plaintiffs' mortgage to Wells Fargo. *Id.* Ex. D. On January 21, 2009, Wells Fargo sent a notice of intent to foreclose to Plaintiffs stating that they were in default because Plaintiffs provided false social security numbers in connection with the origination of the loan. *Id.* Ex. E. Wells Fargo then declared Plaintiffs in default and initiated a foreclosure action in New Jersey state court. *Id.* ¶ 15. Plaintiffs informed Wells Fargo that the false information "was merely a clerical error on the part of Defendants own representative in

---

[2] The factual background is taken from Plaintiffs' Complaint, D.E. 1, as well as the exhibits attached to the Complaint and related New Jersey state court orders. When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint and matters of public record such as court orders. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Khan v. Borough of Englewood Cliffs*, No. 12-7837, 2014 WL 295069, at *3 (D.N.J. Jan. 27, 2014).

2

filling out [Plaintiffs'] loan application" and began taking steps to prevent the foreclosure. Plaintiffs and Wells Fargo participated in two mediations through the New Jersey Foreclosure Mediation Program and sent Wells Fargo multiple loss mitigation applications. *Id.* ¶¶ 17-19; 20. On October 29, 2010, however, Wells Fargo obtained a default judgment against Plaintiffs. *See* Final Judgment, Certification of Brian P. Matthews, Esq. ("Matthews Cert.") Ex. C.

Even after judgment was entered in the state foreclosure matter, Plaintiffs continued their attempts to keep their property. In 2012, Plaintiffs filed a motion to vacate the final judgment in the foreclosure action (*id.*), but their motion was denied. In 2017, Plaintiffs filed a Chapter 7 bankruptcy petition (*id.* ¶ 27) and an order of discharge was entered on November 9, 2017 (*id.* ¶ 28).[3] Further, Plaintiff sent additional loss mitigation applications to Wells Fargo. *Id.* ¶¶ 19, 22, 29. Plaintiffs allege that Wells Fargo refused to acknowledge or review their loss mitigation applications. *Id.* ¶ 24. Despite their efforts, Plaintiffs allege that Defendants refused to review and qualify Plaintiffs for a loan modification even though they qualify. *Id.* ¶ 42.

Plaintiffs filed the instant Complaint on April 17, 2018. The Complaint asserts the following claims for relief: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"); (2) negligence; (3) violations of unnamed state law "prohibiting unfair and deceptive consumer practices with respect to loan servicing"[4]; and (4) common law fraud. Each claim is premised on the same alleged wrongful conduct—that Defendants refused to correct Plaintiffs' mortgage application and modify the mortgage after learning of the "clerical error," and failed to consider Plaintiffs' loss mitigation applications. Compl., D.E. 1. In addition to damages, Plaintiffs seek

---

[3] While not pled, Wells Fargo assigned the judgment of foreclosure to BNYM in 2014. *See* Assignment of Judgment of Foreclosure and Cause of Action, Matthews Cert. Ex. D.

[4] In their opposition brief, Plaintiffs seem to allege that this claim is one pursuant the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20. Plfs. Opp. at 15-17.

3

permanent injunctive relief to prevent the sale of their home at a sheriff's sale. *Id.* at 15-16. Defendants subsequently filed motions to dismiss. D.E. 9, 10.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[5] A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. PA. 2015)). When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

---

[5] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court . . . will raise lack of subject-matter jurisdiction on its own motion.") (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

4

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III. ANALYSIS

#### A. Wells Fargo and BNYM's Motion to Dismiss

##### 1. *Rooker-Feldman* Doctrine

Wells Fargo and BNYM maintain that this Court lacks subject matter jurisdiction over the matter because of the *Rooker-Feldman* doctrine. BNYM Br. at 10-12. "The *Rooker-Feldman* doctrine precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments because such appellate jurisdiction rests solely with the United States Supreme Court."

5

*In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014). In other words, the *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005). The Third Circuit has ruled that the doctrine applies when four elements are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[6] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

"The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.* The Third Circuit advises that "[t]he second requirement—that a plaintiff must be complaining of injuries caused by a state-court judgment—may also be thought of as an inquiry into the source of the plaintiff's injury." *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006). "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* at

---

[6] The Third Circuit previously relied on a different test to determine whether the *Rooker-Feldman* doctrine applied to a subsequent federal suit. However, in light of *Lance* and *Exxon Mobil*, the Third Circuit concluded that "'caution is now appropriate in relying on our pre-*Exxon* formulation of the *Rooker-Feldman* doctrine,' which focused on whether the state and federal suits were 'inextricably intertwined.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 200 n.5 (3d Cir. 2008)). In place of the "inextricably intertwined" analysis, in *Great Western Mining*, the Third Circuit concluded that a four-factor test is appropriate.

167. The Third Circuit has explained that the fourth requirement is "closely related" to the second requirement, but that the fourth requirement is aimed at plaintiff asking a federal district court to engage in "appellate review of state-court decisions or a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law." *Id.* (internal citations and quotations omitted). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the . . . district court has no subject matter to hear the suit." *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Here, the analysis turns on the fourth element.

The applicability of the *Rooker-Feldman* doctrine for federal cases that follow state mortgage foreclosures was recently addressed in *Siljee v. Atlantic Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016). In *Siljee*, the plaintiff sued its mortgagee in federal court after final judgment was entered in a state court mortgage foreclosure action. The plaintiff asserted multiple claims alleging that its mortgagee engaged in various forms of misconduct in connection with the mortgage. *Id.* at *1. The defendant argued that the plaintiff's claims were barred by the *Rooker-Feldman* doctrine. Judge McNulty determined that the claims for quiet title and declaratory judgment were barred by the *Rooker-Feldman* doctrine because the issues essential to these claims were determined by the state court, and any federal court judgment would "in effect declare the foreclosure judgment to be invalid." *Id.* at *5. Through these claims, the plaintiff asked the federal court to hold "that the mortgage was not valid, that [the defendant] is not the mortgage holder, that [the defendant's] position is junior to that of Siljee, or that Siljee owns the property free and clear of any lien." *Id.* Similarly, the claims for breach of contract were closely intertwined with the state foreclosure because the essence of the claim was that the mortgage was invalid or that the defendant had no standing. *Id.* The RESPA claim, however, was

not barred by the *Rooker-Feldman* doctrine. Judge McNulty determined that this claim was separate from the state court proceedings because it was simply a modest claim for damages based on the defendant's failure to respond to a qualified written request, or QWR. *Id.*; *see also Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 547 (D.N.J. 2017) (concluding that claims asserted in subsequent federal case seeking "only damages for Defendant's alleged violation of its statutory and contractual obligations to review and investigate any errors made in the evaluation of Plaintiffs' loss mitigation application" were not barred by the *Rooker-Feldman* doctrine).

Plaintiffs' claims, to the extent they seek damages, are not barred by *Rooker-Feldman* because they address collateral issues to what was actually decided in the foreclosure matter, as the *Siljee* court also found. In the foreclosure action, the state court addressed whether Plaintiffs defaulted and Wells Fargo's right to foreclose. But here, Plaintiffs attack Wells Fargo's alleged failure to recognize and fix the alleged clerical error in Plaintiffs' mortgage application. Although a decision in Plaintiffs' favor puts the foreclosure on admittedly tenuous footing, this Court is not actually asked to conclude that the state court erred in the foreclosure action. *See, e.g., Siljee*, at *5; *see also Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 521 (D.N.J. 2012) ("The Third Circuit has distinguished lawsuits based on a defendant's actions . . . from lawsuits in which the state court judgment itself is challenged."). As a result, Plaintiffs' damages claims are not barred by the *Rooker-Feldman* doctrine.

This is not the case for Plaintiffs' claim for injunctive relief. In addition to damages, Plaintiffs seek a permanent injunction preventing the sale of their home through a sheriff's sale. Plfs. Opp. at 11-12. If the Court were to grant this relief if would void the state court's decision as to Wells Fargo and BNYM's right to foreclose on Plaintiffs' mortgage. *See Siljee*, at *5. Thus,

the Court lacks jurisdiction to entertain Plaintiffs' claim for injunctive relief as a result of the *Rooker-Feldman* doctrine. The claim for injunctive relief is therefore dismissed.

### 2. Entire Controversy Doctrine

Wells Fargo and BNYM also argue that the Complaint should be dismissed in its entirety because Plaintiffs' claims are barred by the entire controversy doctrine. BNYM Br. at 14-16. When deciding a motion based on preclusion, the Court applies the preclusion law from the first forum, here New Jersey state court. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 221 (3d Cir. 2016). "The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Similar to *res judicata*, the entire controversy doctrine "extinguishes any subsequent federal-court claim that could have been joined but was not raised in the prior state action." *Siljee*, 2016 WL 2770806, at *7. The entire controversy doctrine is an affirmative defense that may be considered as grounds for dismissal under Rule 12(b)(6) if its application is clear from the face of the complaint. *Rycoline Prods., Inc.*, 109 F.3d at 886.

New Jersey Court Rule 4:30A, which codifies the entire controversy doctrine, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Generally, "[t]he entire controversy rule applies in federal court where there has been a previous state court action involving the same transaction." *Puche*, 256 F. Supp. 3d at 547. Rule 4:30A, however, only applies to claims that could have been joined in the prior proceeding. *Siljee*, 2016 WL 2770806, at *8. Further, in the context of foreclosure matters, the entire controversy doctrine is limited to "germane" claims. *Id.* (citing N.J. Ct. Rule 4:64-5). In other words, if a claim was

not germane, it need not have been brought in the prior foreclosure action and would not be subject to the entire controversy doctrine.

A claim is germane if it arises out of the underlying mortgage transaction. *Siljee*, 2016 WL 2770806, at *8 (quoting *Leisure Tech.–Ne. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975)). A claim that is based on "conduct of the mortgagee . . . prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure" is germane. *Zebrowski v. Wells Fargo Bank, N.A.*, No. 07-5236, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (quoting *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 540 (App. Div. 1998)). In addition, "[c]laims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property." *Puche*, 256 F. Supp. 3d at 549; *see also Siljee*, 2016 WL 2770806, at *10 (concluding that RESPA claim was germane to prior foreclosure matter). Here, all four of Plaintiffs' claims are premised on Wells Fargo's failure to correct the "clerical error" in Plaintiffs' mortgage application. Thus, each of Plaintiffs' claims arise out of the mortgage transaction. As a result, the Court concludes that Plaintiffs' claims are germane such that they are now barred by entire controversy doctrine.

Plaintiffs argue that the entire controversy does not apply because their claims were unknown at the time of the original action, citing to the fact that they did not attempt to raise these issues in the state court until their motion to vacate final judgment in 2012. Plfs. Opp. at 10. The entire controversy doctrine does not bar claims that were "unknown, unripened or unaccrued at the time of the original action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citing *Mystic Isle Dev. Corp. v. Perkskie & Nehmad*, 142 N.J. 310 (1995)). However, "[i]f during the pendency of the litigation, claims arise which are part of the entire controversy, the claimant *must* seek leave to

file supplemental pleadings" or such claims will be barred in a subsequent suit. *Puche*, 256 F. Supp. 3d at 548. The fact that Plaintiffs did not assert these issues in state court until 2012 is a red herring[7] because Plaintiffs first learned of the "clerical error" in January 2009, when Wells Fargo informed Plaintiffs that they were in default for allegedly providing false social security numbers. Comp. ¶ 14. In fact, Plaintiffs allege that Wells Fargo failed to respond to resulting loss mitigation applications while the foreclosure proceedings were pending. *Id.* ¶ 19. Because Plaintiffs were aware of the underlying conduct, the alleged clerical error, prior to the final judgment in the foreclosure matter, the claims were ripe. As a result, Plaintiffs' argument is unavailing.[8] BNYM and Wells Fargo's motion to dismiss is granted on these grounds.

In sum, the Complaint is dismissed in its entirety as to Wells Fargo and BNYM. Moreover, providing Plaintiff with an opportunity to amend the Complaint as to these Defendants would be futile because an amendment could not overcome the *Rooker-Feldman* or the entire controversy doctrine. As a result, dismissal is with prejudice as to Wells Fargo and BNYM. *See Mason v. US Bank*, No. 16-1366, 2016 WL 7189828, at *6 (D.N.J. Dec. 12, 2016).

### B. Gateway's Motion to Dismiss

Gateway contends that the Complaint should be dismissed because Plaintiffs fail to plead any facts demonstrating that Gateway was involved in the alleged wrongdoing. *See generally* Gateway Br. Federal Rule of Civil Procedure 8, which addresses the sufficiency of pleadings, is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555. As discussed, Rule 8 requires a plaintiff to plead "factual

---

[7] In addition, Plaintiffs do not indicate that they were legally prohibited from raising their claims at an earlier point in the state court proceedings.

[8] Because Plaintiffs' remaining claims are barred by the entire controversy doctrine, the Court does not address Wells Fargo and BNYM's remaining arguments as to dismissal.

11

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. 678; *see also Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 603 (D.N.J. 2010) (explaining that "a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability"). Plaintiffs fail to plead sufficient facts to establish that Gateway was involved in the purported wrongdoing. The only specific allegation as to Gateway is that it "initially prepared and submitted the faulty lending documents at issue." Compl. at 3. Plaintiffs, however, plead that Gateway "assigned its right to another Defendant in 2009." *Id.* at 3-4. As a result, Gateway was not involved in Wells Fargo's decision to pursue foreclosure proceedings against Plaintiffs, the foreclosure matter, or Wells Fargo's alleged failure to review Plaintiffs' loss mitigation applications. Thus, Plaintiffs plead insufficient facts demonstrating that Gateway was in involved in the alleged wrongful conduct.[9] Gateway's motion to dismiss is therefore granted, and Gateway is dismissed as a party in this matter.

V. **CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss (D.E. 9, 10) are **GRANTED** and the Complaint is dismissed in its entirety. The Complaint is dismissed with prejudice as to

---

[9] In their opposition brief, Plaintiffs argue that Gateway is liable because it made a mistake in Plaintiffs' original mortgage application by including Ms. Rodriguez's passport number instead of her social security number then "failed to fulfill its continuing obligation to correct all errors and defects connected with the mortgage loan application before it assigned its interest to" Wells Fargo. Plfs. Opp. at 6. The Court, however, disregards this argument because Plaintiffs cannot augment their Complaint through briefing. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). But even if properly pled, Plaintiffs' claims against Gateway are barred by the statute of limitations; Gateway assigned its interest in the mortgage to Wells Fargo in 2009 and the Complaint was not filed until 2018. *See* N.J.S.A. 2A:14-1 (setting six-year statute of limitation for negligence and fraud claims, among others); 12 U.S.C. § 2614 (setting three-year statute of limitation for Plaintiffs' RESPA claim).

Wells Fargo and BNYM. As for Gateway, the Complaint is dismissed without prejudice and Plaintiffs are granted leave to file an Amended Complaint. Plaintiffs have thirty (30) days to file an Amended Complaint, if they so choose, consistent with this Opinion. If Plaintiffs fail to file an Amended Complaint, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: April 9, 2019

_____
John Michael Vazquez, U.S.D.J.